IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>MICHELLE LEE MARR,<br><br>　　　　　　　　　Defendant. | 8:23–CR–214<br><br>MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATIONS ON MOTION TO SUPPRESS |

The Government has charged defendant Michelle Lee Marr with second degree murder and tampering with documents or proceedings. Filing 1. The defendant has filed a Motion to Suppress, seeking to suppress evidence obtained during a warrantless search of her cell phone and potentially inculpatory statements made during an un-*Mirandized* interview. Filing 31. United States Magistrate Judge Michael D. Nelson held an evidentiary hearing on the Motion on August 29, 2024. Filing 46 (Text Entry); Filing 51 (Transcript). The magistrate judge then submitted a Findings and Recommendation that the Motion to Suppress should be denied, Filing 52, and the defendant filed an Objection, Filing 53. For the reasons stated below, the magistrate judge's Findings and Recommendation are accepted, the defendant's objections are overruled, and the defendant's Motion to Suppress is denied.

### I. BACKGROUND

#### A. Factual Background

The magistrate judge's Findings and Recommendation discusses the facts pertinent to the defendant's Motion in greater detail. *See* Filing 52 at 1–8. The following background information

1

provides context for the Court's ruling on the defendant's objections.[1] On March 12, 2022, law enforcement and emergency medical personnel responded to a residence on the Winnebago Reservation after the defendant reported finding the victim, her fiancé, unconscious. Filing 51 at 36. Responding law enforcement officers did not notice anything unusual about the victim besides his unconsciousness. Filing 51 at 15. The victim died in the hospital the next day March 13, 2022, with a brain injury caused by "blunt force trauma inconsistent with a fall." Filing 51 at 36–38, 47. Medical staff at the hospital subsequently discovered that "heavy fresh makeup was applied all over [the victim's] face" to conceal his injuries. Filing 51 at 49.

     Special Agent Joel Feekes of the FBI investigates crimes in Indian Country and first spoke with the defendant on the morning of March 13, 2022, at the defendant's mother's house in Winnebago. Filing 51 at 34–37. Officer Matthew Benson with the Winnebago Tribal Police was also present for this interview. Filing 51 at 37. Agent Feekes wore plain clothes without a visible firearm, and Officer Benson wore his police uniform with a visible firearm. Filing 51 at 37–38. During this interview, the defendant reported that she had passed out around 5:30 PM on March 11, 2022, and that she did not know what happened to the victim between then and the next day, when she called emergency services. Filing 51 at 39. The defendant further indicated to law enforcement that she and the victim shared a cell phone, and that the victim may have used the phone to make calls during that period. Filing 51 at 39. The officers asked the defendant if she would be "comfortable" with law enforcement taking possession of the phone, and the defendant provided the phone and password. Filing 51 at 39–40.

---

[1] The Court has reviewed the exhibits presented at the Motion to Suppress hearing and the transcript of that hearing. Filing 47 (Exhibit List); Filing 51 (Transcript). The magistrate judge accurately recounted the evidence received at the hearing in the Findings and Recommendation.

Subsequently, on March 17, 2022, Agent Feekes again spoke with the defendant, this time at the defendant's house in Winnebago. Filing 51 at 41. At this point, an autopsy had determined that the victim's death was a homicide. Filing 51 at 41. Agent Feekes, again unarmed and wearing plain clothes, asked the defendant to sign a consent-to-search form related to the cell phone, and the defendant did so. Filing 51 at 42–44. The government submitted this form as an exhibit, and it contains the defendant's signature, a description the property to be searched, and a verification that the defendant had "been advised of [her] right to refuse consent" and "g[a]ve this permission voluntarily." Filing 47 (Ex. 3). Agent Feekes gave the defendant an opportunity to read the form but never specifically told her that she had the right to refuse. Filing 51 at 75. Agent Feekes testified that he did not have the form on him during the first interview and that nothing had been done with the phone prior to receiving the signed consent-to-search form. Filing 51 at 44. The defendant avers that this warrantless search of her cell phone violated her Fourth Amendment rights, and she seeks to have any information resulting from this search suppressed. Filing 31 at 3 (Motion to Suppress).

The following day, March 18, 2022, Agent Feekes conducted a third interview with the defendant, again at her residence. Filing 51 at 44. FBI Special Agent Paul Voss accompanied Agent Feekes, and neither Agent wore a law-enforcement uniform or carried a visible firearm. Filing 51 at 45. Agent Feekes testified that he had learned about "a history of assaults and some physical abuse by" the defendant against the victim prior to this interview. Filing 51 at 46. The Agents never advised the defendant of her *Miranda* rights, but at the beginning of the interview, Agent Feekes told the defendant, "You know, this is voluntary. Like, you don't have to talk to us. And obviously you are not in any kind of custody with us." Filing 47 (Ex. 103). Agent Feekes testified

3

that he had not yet prepared an arrest warrant or complaint for the defendant, Filing 51 at 74, and that the purpose of this third interview was

> to re-question [the defendant] about some of the inconsistencies or discrepancies that we found from our investigation based on interviews of other witnesses or potential witnesses, other individuals, compared to what [the defendant] said, wanted to clarify if she had any new statements to make, and then also ask her if she would be willing to take a polygraph.

Filing 51 at 45. Agent Feekes conceded that this third interview was "an interrogation" but described the tenor as "calm" and "conversational." Filing 51 at 48–49.

During this March 18, 2022, interview, the defendant made statements that could potentially be interpreted as inconsistent or inculpatory. The defendant told the Agents that she had applied makeup to the victim's left cheek at some time prior to March 12, 2022, because the victim asked her to cover a bruise. Filing 51 at 49. Agent Feekes testified that this statement was contradicted by the hospital medical staff, who "noticed [that] heavy fresh makeup was applied all over" the victim's face, not just on his cheek. Filing 51 at 49. Moreover, Agent Feekes specifically questioned the defendant about "some of the inconsistencies" between her answers and statements that others had given to law enforcement. Filing 47 (Ex. 103 at 13–14). For example, the defendant denied seeing the victim between 5:30 PM on March 11, 2022, and around noon on the next day when she called emergency services upon finding him unresponsive. Filing 47 (Ex. 103 at 14). The defendant stated that she was "passed out" during this period. Filing 47 (Ex. 103 at 12). However, hospital medical staff informed law enforcement officers that the defendant had stated that the victim "got up the morning of [March 12, 2022] and put on makeup and then went back to bed." Filing 47 (Ex. 103 at 13–14). Moreover, the defendant's niece had reported to law enforcement that the defendant said she saw and spoke to the victim on the morning of March 12, 2022. Filing 47 (Ex. 103 at 14–15). When the Agents suggested that the defendant had struck the

victim, the defendant maintained her narrative—that she did not know what happened to the victim—and stated that she was "not going to change [her] story." Filing 47 (Ex. 103 at 48). The Agents suggested that a jury would find her guilty of murdering the defendant, and the defendant accused the Agents of "trying to make [her] say something." Filing 47 (Ex. 103 at 48–49, 57). Finally, the Agents asked the defendant to submit to a polygraph test, and the defendant declined. Filing 51 at 50.

Lastly, Agent Feekes's fourth and final interview with the defendant occurred at her home on July 27, 2022, and was "a very short interview" that merely "reiterated" the previous conversations. Filing 51 at 51. The defendant avers that any statements given during these interviews were involuntary as products of a custodial interrogation without *Miranda* warnings, and she seeks to have these statements suppressed. Filing 31 at 3 (Motion to Suppress).

### B. Procedural Background

The defendant was indicted on October 17, 2023, for second degree murder and for tampering with documents or proceedings. Filing 1. The defendant filed a Motion to Suppress on March 14, 2024. Filing 21. The magistrate judge held a suppression hearing on August 29, 2024, Filing 46 (Text Order), and issued a Findings and Recommendation that the motion be denied on October 15, 2024, Filing 52. The defendant filed an objection on October 29, 2024, Filing 53, to which the Government responded on November 5, 2024, Filing 54. The defendant objects to the magistrate judge's findings "that Defendant was not in custody when she was interrogated and that Miranda warnings were not necessary." Filing 53. The defendant further objects to the "finding that the warrantless search of Defendant's phone was conducted with permission." Filing 53.

## II.  ANALYSIS

### A.  Applicable Standards

Under the Federal Rules of Criminal Procedure, the Court "must consider de novo any objections to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections[.]"). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Moreover, a party's failure to object in accordance with Rule 59 "waives a party's right to review." Fed. R. Crim. P. 59(b)(2); *United States v. Merrett*, 9 F.4th 713, 716 (8th Cir. 2021) (noting that the defendant "did not object to the magistrate judge's order denying his motion, and his failure to object waives his right to review under Federal Rule of Criminal Procedure 59(a)"), *cert. denied*, 142 S. Ct. 815 (2022).

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[ ] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin

6

term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law[.]"). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B. The Defendant's Consent to the Search and Seizure of her Cell Phone Was Voluntary

*1. The Magistrate Judge's Findings and the Parties' Arguments*

The magistrate judge concluded that the defendant voluntarily consented to the search and seizure of her cell phone. Filing 52 at 13–17. In support of this conclusion, the magistrate judge noted that Agent Feekes never demanded, coerced, "or otherwise suggest[ed]" that the defendant "was required to give him her phone." Filing 52 at 14. To the contrary, the magistrate judge noted that Agent Feekes asked the defendant whether she would be "comfortable" with law enforcement taking her cell phone. Filing 52 at 16. While Agent Feekes did not "explicitly tell Defendant she was free to refuse to provide her phone," the magistrate judge found that the Agent's use of conditional language—*i.e.*, telling the defendant that law enforcement "might" need the cell phone at a later time—showed that the defendant was not "'succumbing' to law enforcement authority." Filing 52 at 15–16. The sum of these considerations, in the magistrate judge's view, was that no

Fourth Amendment violation occurred with regards to the search and seizure of the defendant's cell phone.

The defendant objects to this conclusion, stating that her consent to the search and seizure was not "freely given," Filing 53 at 4–5, despite having signed a form indicating that she "g[a]ve this permission voluntarily," Filing 47 (Ex. 3). The defendant argues that "the fact that the Agent felt the need to go back and do the 'paperwork' to en[s]ure the consent is documented is itself proof that consent was muddy and that even Agent Feekes was not confident that it [was] freely given." Filing 53 at 4. The defendant asks the Court to "conclude that any consent was the product of coercive law enforcement conduct and sustain Defendant's motion to suppress evidence extracted from the cellular phone." Filing 53 at 5. In response, the Government contends that the magistrate judge properly found the search and seizure of the defendant's cell phone was the product of voluntary consent.

2. *Applicable Standards*

"The Fourth Amendment protects against unreasonable searches and seizures." United States v. Brown, 60 F.4th 1179, 1182 (8th Cir.), *cert. denied*, 143 S. Ct. 2623 (2023). However, "[a]n individual may validly consent to an otherwise impermissible search if, in the totality of the circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." *United States v. Farnell*, 701 F.3d 256, 263 (8th Cir. 2012) (citation omitted). "This is an objective standard such that 'a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent.'" *Id.* (citing *United States v. Cedano-Medina*, 366 F.3d 682, 684–85 (8th Cir. 2004)). "Consent is voluntary 'if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or

coercion, express or implied.'" *United States v. Fleck*, 413 F.3d 883, 891 (8th Cir. 2005) (citation omitted). The Eighth Circuit has formulated a totality-of-the-circumstances test to aid in the voluntariness determination, stating that courts should consider particular characteristics of the defendant, including:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [her] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals.

*United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021). The Eighth Circuit further emphasized the importance of "consider[ing] the environment in which an individual's consent is obtained," and stated the following considerations:

> (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*Gastelum*, 11 F.4th at 904.

   3. *Application*

In her Objection, the defendant does not contend that she did not provide consent to the search and seizure of her cell phone. *See generally* Filing 53. Rather, the defendant's objection is "that any consent was the product of coercive law enforcement conduct" and therefore involuntary. Thus, the Court must only determine whether the defendant voluntarily consented to the search and seizure of her cell phone.

The particular characteristics of the defendant indicate that her consent was voluntarily given. The defendant was of sufficient "age and mental ability" to provide voluntary consent.

*Gastelum*, 11 F.4th at 904. The record reflects that the defendant is nearly forty years old, and there is no suggestion that she is of diminished mental ability. There is also no suggestion that the defendant was "intoxicated or under the influence of drugs" when she provided her consent. *Id.* To the contrary, the defendant appeared to be of sound mind during this interview, comprehending the officers' questions and formulating lucid responses. While the defendant was not explicitly "informed of [her] *Miranda* rights" before providing consent to search, *id.*, *Miranda* warnings were not required as "consent to search is not an incriminating statement," *United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012) (quoting *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir.1985)). Even so, the defendant signed the consent-to-search form, which explicitly notified her of the "right to refuse consent" and stated that her permission was voluntarily given. Filing 47 (Ex. 3). Moreover, the defendant's previous interactions with law enforcement suggest that she would have been "aware, through prior experience, of the protections that the legal system provides for suspected criminals." *Gastelum*, 11 F.4th at 904. The defendant thus "behave[ed] in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented." *Farnell*, 701 F.3d at 263.

The environment in which the defendant gave her consent further demonstrates that her consent was voluntary. Because the defendant was not in detention, the "length of the detention" and "whether the individual was in custody or under arrest" considerations favor a finding of voluntariness. *Gastelum*, 11 F.4th at 904. Moreover, the interview at issue occurred at the defendant's mother's house—hardly the type of "secluded location" associated with "duress or coercion." *Fleck*, 413 F.3d at 891. Finally, the officers did not make any threats, promises, or misrepresentations to extract consent; instead, as the magistrate judge correctly noted, "Agent Feekes spoke conditionally and hypothetically about whether or how long they would need the

phone." Filing 52 at 15. This use of conditional language is inconsistent with coercion. Considering the totality of the circumstances, the defendant's consent to seize and search her cell phone was "freely and voluntarily given, and not the product of implicit or explicit coercion." Farnell, 701 F.3d at 263. The Court therefore agrees with the magistrate judge's conclusion that suppressing evidence obtained from the defendant's cell phone is unwarranted.

### C. The Defendant's Statements to Law Enforcement Did Not Require *Miranda* Warnings[2]

*1. The Magistrate Judge's Findings and the Parties' Arguments*

The magistrate judge, assuming that law enforcement's interviews of the defendant were "interrogations," concluded that *Miranda* warnings were nevertheless unnecessary because the defendant was not "in custody." Filing 52 at 9. The magistrate judge reasoned that the defendant "was neither formally arrested nor faced restraints on her freedom of movement remotely close to a degree associated with a formal arrest at any point" and that "all three interviews took place either at Defendant's mother's home or her own home." Filing 52 at 9. The magistrate judge also noted that in the third interview—which was "more confrontational" than the other interviews— "Agent Feekes explicitly advised Defendant that 'this is voluntary. . . you don't have to talk to us. And obviously you are not in any custody with us[.]'" Filing 52 at 10. The magistrate judge

---

[2] The magistrate judge analyzed whether the defendant's statements were involuntary, in addition to whether *Miranda* warnings were required, and concluded that any statements made by the defendant were voluntary. *See* Filing 52 at 11–13. In her Objection, the defendant makes a conclusory assertion "that her statement was involuntarily made" but does not cite any facts or law to support this claim. *See* Filing 53 at 2–4. The defendant has therefore waived any argument that her statements were made involuntarily. *See* Fed. R. Civ. P. 59(b)(2) (providing that a defendant "waives [the] right to review" where she fails to submit "specific written objections to the proposed findings and recommendations"); *see also United States v. Pacheco-Poo*, 952 F.3d 950, 953–54 (8th Cir. 2020) (arguments were waived when the proponent did not "cite any case nor detail any facts for th[e] argument"). The Court is "not obliged to consider [any] perfunctorily raised, undeveloped argument[.]" *In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th Cir. 2024) (quoting *United States v. Kirk*, 528 F.3d 1102, 1104 n.2 (8th Cir. 2008)). To the extent the defendant did not waive any argument that her statements were involuntary, this argument fails for the same reasons her consent to the search and seizure of her cell phone was voluntary, as discussed above.

determined that under "the totality of the circumstances" regarding law enforcement's interrogations of the defendant, the defendant should "have understood that [s]he was free to terminate the interview" and was therefore not entitled to receive *Miranda* warnings. Filing 52 at 10 (quoting *United States v. Roberts*, 975 F.3d 709, 716 (8th Cir. 2020)).

The defendant objects, arguing that "the circumstances of her interrogation, while not traditionally custodial, do indicate toward a finding that would require law enforcement to administer *Miranda* warnings." Filing 53 at 2. The defendant contends that the magistrate judge gave too much weight to "law enforcement['s] advising the Defendant that she was not in custody," which she argues "certainly doesn't mean the Defendant felt any power to tell law enforcement to leave." Filing 53 at 4. The defendant argues that this advisement "did not mean that the Defendant felt she was free to terminate the conversation." Filing 53 at 4. In response, the Government argues that the magistrate judge did not give undue weight to any individual factor and properly applied the totality-of-the-circumstances test in determining that *Miranda* warnings were not required.

    2. *Applicable Standards*

"The Fifth Amendment requires that Miranda warnings be given when a person is interrogated by law enforcement after being taken into custody." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (quoting *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)). "An individual is in custody if there is restraint on freedom of movement of the degree associated with a formal arrest." *United States v. LaRoche*, 83 F.4th 682, 688 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 858, 218 L. Ed. 2d 51 (2024) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). The "relevant question[s]" to determine whether a person is in custody is "how a reasonable person in the suspect's position would have understood the situation," *LaRoche*, 83 F.4th at 688 (quoting *United States v. Boucher*, 909 F.2d 1170, 1174 (8th Cir. 1990)), and

12

"whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011)). To aid in the custodial determination, the Eighth Circuit has "set forth six non-exclusive indicia of custody," including:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020) (alterations in original and citation omitted).

3. *Application*

Considering the totality of the circumstances surrounding the defendant's interrogations—particularly the third interrogation, which the parties agree was the most confrontational—the Court concludes that the defendant was never "in custody" and *Miranda* warnings were therefore unnecessary.[3] First and foremost, although no single circumstance is dispositive, law enforcement's explicit advisements to the defendant that conversing was "voluntary," that she did not "have to talk to" law enforcement, and that she was "not in any custody" weighs heavily against a finding that the defendant was, in fact, in custody. In addition, the officers never told the defendant that she had to speak with law enforcement or that she could not refuse their requests.

---

[3] Like the magistrate judge, the Court will also assume without deciding that the challenged interviews were "interrogations" because concluding that the defendant was not in custody disposes of the defendant's objection.

13

Under these circumstances, it is unlikely that the defendant felt constrained; to the contrary, the defendant explicitly rebuffed law enforcement officers' request that she submit to a polygraph test. Filing 51 at 50. The defendant's willingness to reject an overt request from law enforcement belies the notion that she felt her freedom was restrained.[4]

Additional considerations support the magistrate judge's finding that the defendant was not in custody and therefore not entitled to receive *Miranda* warnings. The defendant was not "placed under arrest at the termination of the questioning." *Hoeffener*, 950 F.3d at 1046. Nor were "strong arm tactics or deceptive stratagems [ ] employed during questioning." *Id.* As the magistrate judge correctly noted, "use of deception is irrelevant unless it relates to a reasonable person's perception of his freedom to depart." Filing 52 at 10 (citing *Laurita*, 821 F.3d at 1026). While officers told the defendant that a jury would likely find her guilty of premeditated murder—rather than some lesser form of homicide—based on the circumstances of the victim's death and the defendant's history of abusing the victim,[5] this line of inquiry did not bear on the defendant's "perception of [her] freedom to depart." *Laurita*, 821 F.3d at 1026. In any event, these tactics were ineffective, as the defendant refused to recant and repeatedly stated that she was "not going to change [her] story" that she did not know what caused the victim's injuries. Filing 47 (Ex. 103 at 48). There is no indication that these questions caused the defendant to believe she could not terminate the conversation. *See id.* (providing that a defendant is not in custody if "a reasonable person would

---

[4] The defendant's refusal to submit to a polygraph test also repudiates the notion that "the authorities overbore the defendant's will and critically impaired h[er] capacity for self-determination," such that any statement by the defendant could be considered "involuntary." *LaRoche*, 83 F.4th at 689.

[5] The "interrogation" inquiry for *Miranda* purposes asks whether "an officer should know that his statements are reasonably likely to elicit an incriminating response" and is separate from the custodial determination. *LaRoche*, 83 F.4th at 688 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). As discussed above, the Court assumes without deciding that the defendant's interviews were "interrogations" for *Miranda* purposes.

14

have felt at liberty to terminate the interrogation"). Even if, as the defendant argues, she might have harbored a subjective belief that she was not "free to terminate the conversation," Filing 53 at 4, the custodial "determination is based on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (citation and internal quotations omitted).

Moreover, the environment of the interrogations indicate that the defendant was not in custody. Each of the interrogations occurred either at the defendant's house or her mother's house. Filing 51 at 34–37, 41. The Eighth Circuit has explicitly described a defendant's "own turf" as "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation," *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004), and a defendant's "mother's home" as a "non-custodial atmosphere," *LaRoche*, 83 F.4th at 688. Finally, the Court disagrees with the defendant's contention that "once the Court listens to the audio of the third interrogation, it will be surprised, as was the Defendant, that she was not arrested." Filing 53 at 4. To the contrary, the Court agrees with the magistrate judge's assessment that the "interviews were generally conversational; law enforcement did not raise their voices, yell, threaten, intimidate, or otherwise use violence to coerce Defendant into speaking." Filing 52 at 12. The Eighth Circuit has also stated that an "amicable conversation" lends itself to "a non-custodial environment." *LaRoche*, 83 F.4th at 688. Thus, under "totality of the circumstances," *Miranda* warnings were not required because "a reasonable person" in the defendant's position "would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *Laurita*, 821 F.3d at 1026. Because the law enforcement officers did not violate the defendant's Fifth Amendment rights, the

Court agrees with the magistrate judge that suppression of the defendant's statements is not warranted.

### III. CONCLUSION

For these reasons, and upon *de novo* review, the Court agrees with the findings and recommendation reached by the magistrate judge that suppression is not appropriate in this case. The defendant's consent to the search and seizure of her cell phone was given voluntarily, and the defendant was not entitled to receive *Miranda* warnings before her interrogation because she was not in custody. The defendant waived any argument that her statements were made involuntarily, but to the extent the defendant did not so waive, this argument fails for the reasons stated above. Accordingly,

IT IS ORDERED:

1. Defendant Michelle Lee Marr's Objections to the Findings and Recommendation, Filing 53, are overruled;

2. The United States Magistrate Judge's Findings and Recommendation, Filing 52, is accepted; and

3. Defendant Michelle Lee Marr's Motion to Suppress, Filing 31, is denied.

Dated this 22nd day of November, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge